UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| MICHAELA ANN PRICE,<br>　　　　Plaintiff,<br>　　v.<br>NANCY A. BERRYHILL,<br>　　　　Defendant. | Case No. 17-cv-03342-RMI<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 33, 36 |

Plaintiff Michaela Ann Price seeks judicial review of an administrative law judge ("ALJ") decision denying her application for benefits under Title XVI the Social Security Act. Plaintiff's request for review of the Administrative Law Judge's ("ALJ's") unfavorable decision was denied by the Appeals Council. (Administrative Record ("AR") 1-3.) The ALJ's decision is therefore the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (Docs. 5, 9) and both parties have moved for summary judgment (Docs. 33, 36). For the reasons stated below, the court will deny Plaintiff's motion for summary judgment, and will grant Defendant's motion for summary judgment.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## PROCEDURAL HISTORY

Plaintiff filed her initial application for Title XVI benefits on November 20, 2013, alleging an onset of disability date of July 13, 1993. (AR 169.) Plaintiff's application was denied on January 29, 2014. (AR 103.) Plaintiff filed a request for hearing with an ALJ and a hearing was held on March 14, 2016. (AR 41-75.) The ALJ issued an unfavorable decision on April 13, 2016. (AR 22.) Plaintiff requested review by the Appeals Council on June 10, 2016. (AR 167.) The request for review was denied on May 19, 2017. (AR 1-6.)

## THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[1] The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. (AR 22-40.)

---

[1] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will only cite to the SSI regulations herein unless noted otherwise.

1   At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since November 6, 2013. (AR 27.)

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: scoliosis and status post lumbar fushion. (AR 27.)

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR 28.)

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC") and then determine whether the complaint has the RFC to perform the requirements of his past relevant work. *See id*. § 416.920(e) and 416.945. The ALJ found Plaintiff had the RFC to perform sedentary work as defined in 20 CFR 416.967(a) except Plaintiff: can lift and/or carry ten pounds occasionally, less than ten pounds frequently; can stand or walk for two hours out of an eight-hour workday; can sit for six hours out of an eight-hour workday; can occasionally climb, balance, stoop, kneel, crouch or crawl; cannot climb ladders, ropes, or scaffolds; must avoid concentrated exposure to extreme cold, vibration and industrial hazards; can occasionally operate foot controls with lower right extremity; requires the use of a cane for ambulation. (AR 29.) The ALJ found that

3

1 Plaintiff had no past relevant work. (AR 34.)

2 At Step Five, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. *See id*. § 416.920(g). If the claimant is able to do other work, she is not disabled. The ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including bench hand assembler, table worker, and lens inserter. (AR 35.) Thus, the ALJ found Plaintiff not disabled since November 6, 2013, the date the application was filed. (AR 35.)

## DISCUSSION

Plaintiff's Testimony Regarding Her Symptoms

Plaintiff contends that the ALJ committed harmful legal error by rejecting her symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in the record as a whole. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (the ALJ must provide specific, clear, and convincing reasons supported by evidence in the record for rejecting a claimant's testimony, and must specify which testimony she finds not credible); *see also, Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.").

The ALJ began his findings regarding Plaintiff's testimony with a detailed review of that testimony, comprising just under one and one half single-spaced pages. (AR 29-31.) The ALJ then stated as follows:

> The persuasiveness of the claimant's allegations regarding the severity of her symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence in the record.
>
> Although the claimant's activities of daily living were somewhat limited, some of the physical and mental abilities and social interactions required in order to perform those activities are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition. The claimant indicated that she could perform personal grooming activities, prepare simple meals, perform some household chores, drive, shop and occasionally visit with

4

> friends.(Testimony and Ex. 3E). Additionally, although she reported she received assistance from her sister, the claimant mentioned she lived alone as of the date of the hearing. The claimant's ability to participate in such activities undermined the persuasiveness of the claimant's allegations of disabling functional limitations.
>
> The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. A November 13, 2013 X-ray of the thoracic spine revealed no significant interval change in moderate levoscoliosis of the thoracic spine status post Harrington rods extending from T1-L3 (Ex. 6F, p.18). Although physical examination on March 13, 2014 revealed tenderness to palpation in the mid thoracic regional [sic] bilaterally, the claimant had a well healed mid line incision in the thoracolumbar spine, no focal motor deficits and a gait within normal limits (Ex. 11F, p.9). Physical examination on May 6, 2014 revealed normal findings (Ex. 14F, p. 41). On May 9, 2014, physical examination revealed no focal motor deficits and a gait within normal limits (Ex. 12F, p.10). On July 3, 2014, physical examination revealed no tenderness to palpation of the thoracic or lumbar spine, no focal motor deficits and a gait within normal limits (Ex. 12F, p. 7). On March 16, 2015, physical examination revealed no focal motor deficits and a gait within normal limits (Ex. 12F, p.3). Physical examination on January 4, 2016 revealed no tenderness, normal tone and strength, normal gait, no costovertebral tenderness and normal sensation (Ex. 16F, p.17). These findings are inconsistent with the alleged severity of her symptoms and functional limitations and diminishes [sic] the persuasiveness of those allegations.

(AR 31.)

The ALJ complied with the requirements of *Brown-Hunter* and *Lester,* finding that Plaintiff's credibility as to her testimony regarding the severity of her alleged symptoms and limitations was diminished for specific reasons. First, the ALJ relied on evidence in the record in the form of Plaintiff's own testimony about her ability to participate in specific daily activities, concluding that "some of the physical and mental abilities and social interactions required in order to perform those activities are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition." (AR 31.) While Plaintiff complains that the ALJ acknowledged the significant assistance Plaintiff received from her sister but failed to factor that assistance into his analysis, nothing in the ALJ's language indicates such a failure. The ALJ both acknowledged the assistance Plaintiff received from her sister, and noted Plaintiff's limitations, finding that she "could perform some household chores." (AR 31.) This is not an instance of the oft-criticized practice of simply equating the general ability to perform activities of daily living with the ability to maintain a job. *See generally*, *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Rather, the ALJ relied on

5

specific mental and physical abilities, as well as social interactions, to which Plaintiff testified.

Second, the ALJ cited seven specific medical reports in the record, as set forth above. These records cover the time between November 2013 and January 2016. While Plaintiff stresses that she underwent extensive spinal surgery in 2004, some nine years before she applied for Social Security benefits, this is acknowledged by the ALJ in his summary of the November 13, 2013 medical report in his reference to "Harrington rods." Plaintiff also stresses that she underwent pain management treatment in order to relieve her pain. The court finds, however, that this does not diminish the ALJ's reliance on the objective evidence in the form of Plaintiff's own testimony and the medical record to reach his conclusions. Contrary to Plaintiff's argument, the ALJ did not pass judgment on the course of treatment prescribed by Plaintiff's physicians. *See generally, Trevizio v. Berryhill,* 871 F.3d 664, 683 (9th Cir. 2017) ("The ALJ failed to provide legally sufficient reasons for rejecting the informed medical opinion of Treviso's primary treating physician and instead improperly substituted her judgment for that of the doctor."). To the contrary, rather than rejecting the opinions of Plaintiff's physicians, the ALJ actively relied on them when evaluating the credibility of Plaintiff's testimony. Thus, the ALJ did not question Plaintiff's credibility because there was a lack of supporting objective evidence, as is proscribed in *Lester*, but rather did so because specific objective evidence existed which was contrary to Plaintiff's testimony.

The court has considered all of the parties' arguments and finds no error.

<u>Assessment by Treating Medical Provider</u>

Plaintiff contends the ALJ committed harmful legal error by rejecting the assessment completed by her treating medical provider, Melinda Myers Mallory, FNP. Plaintiff contends that the ALJ's conclusion that NP Mallory assessment was inadequately supported by clinical findings is unsupported because the ALJ did not provide citation to the medical record in support of this conclusion. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989 (to properly reject an opinion, an ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"). The court finds no merit to this argument.

The ALJ found as follows regarding the opinion of Mallory:

> The undersigned has given little weight to the opinion of the nurse practitioner, Melinda Myers Mallory (Ex. 8F). **The undersigned has given little weight to this opinion because it is brief, conclusory and inadequately supported by clinical findings.** An opinion that is not from an acceptable medical source is not entitled to be given the same weight as a qualifying medical source opinion. (20 CFR 416.913(a) and (e)). The nurse practitioner assessed functional limitations that would preclude the claimant from working at the level of substantial gainful activity. **The severity of the limitations assessed by the nurse practitioner are inconsistent with the claimant's record as a whole.** A November 13, 2013 X-ray of the thoracic spine revealed no significant interval change in moderate levoscoliosis of the thoracic spine status post Harrington rods extending from T1-L3 (Ex. 6F, p.18). Although a March 13, 2014 physical examination revealed tenderness to palpation in the mid thoracic region bilaterally, the claimant had a well healed mid line incision in the thoracolumbar spine, no focal motor deficits and a gait within normal limits (Ex. 11F, p.9). Physical examination on May 6, 2014 revealed normal findings (Ex. 14F, p. 41). On May 9, 2014, physical examination revealed no focal motor deficits and a gait within normal limits (Ex. 12F, p.10). On July 3, 2014, physical examination revealed no tenderness to palpation of the thoracic or lumbar spine, no focal motor deficits and a gait within normal limits (Ex. 12F, p. 7). On December 30, 2014, physical examination revealed no focal motor deficits and a gait within normal limits (Ex. 12F, p. 5). On March 16, 2015, physical examination revealed no focal motor deficits and a gait within normal limits (Ex. 12F, p.3). Physical examination on January 4, 2016 revealed no tenderness, normal tone and strength, normal gait, no costovertebral tenderness and normal sensation (Ex. 16F, p.17). The undersigned finds the claimant's record as a whole supports a finding the claimant can perform a less than full range of sedentary work.

(AR 34, emphasis added.)

In reaching his decision at Step 4 concerning the RFC, the ALJ summarized NP Mallory's one-page assessment as follows:

> On January 20, 2014, Melynda Myers Mallory, FNP, PNP-C, completed a Functional Capacities Evaluation form on behalf of the claimant (Ex. 8F, p. 19). The nurse practitioner opined the claimant could work for six hours a day, sit for half a day, stand or walk for a quarter of a day, could occasionally bend, squat, climb or reach overhead and could not crawl. She opined the claimant could carry up to ten pounds half of a day and up to 100 pounds a quarter of a day, could occasionally lift up to ten pounds to the waist and overhead, could occasionally perform repeated twisting with the hands and could not perform repeated pulling or pushing with the hands. The nurse practitioner opined the claimant could not work outside year round, work in a confined space, work at heights, work around dangerous machinery or work exposed to dust, fumes or lint.

(AR 32-33.) Thus the ALJ stated that he gave little weight to this opinion of the nurse

practitioner, explained the reasons why, and then reviewed in detail the clinical evidence on which he based his finding, providing references to the medical record. The ALJ's conclusion regarding NP Mallory's assessment was thus sufficiently supported under *Magallanes*.

Plaintiff claims that "[t]he ALJ also rejected NP Mallory's assessment because it 'was not from an acceptable medical source.' (AR 34)." This is an inaccurate representation of what the ALJ stated in his decision. What the ALJ stated was, "[a]n opinion that is not from an acceptable medical source is not entitled to be given the same weight as a qualifying medical source opinion. 20 CFR 416.913(a) and (e))."[2] In discussing the opinions of medical providers who are not within the definition of 'acceptable medical sources' under the regulations in contrast to opinions of medical providers who are within the definition, the Ninth Circuit has held that '[w]hile those providers' opinions are not entitled to the same deference, an ALJ may give less deference to 'other sources' only if the ALJ gives reasons germane to each witness for doing so." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017), citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The court finds that the ALJ's statement that "[a]n opinion that is not from an acceptable medical source is not entitled to be given the same weight as a qualifying medical source opinion," is an accurate restatement of the holding in *Molina* that the opinions of medical providers who are not "acceptable medical sources" are not entitled to the same deference as the opinions of medical providers who are. Further, the ALJ gave the required germane reasons for

---

[2] As of April 13, 2016, the date of the ALJ's decision, 20 CFR 416.913(a) provided in part as follows: "(a) Sources who can provide evidence to establish an impairment. We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s). See §416.908." Subsection (a) then provides a list of acceptable medical sources, which includes: (1) Licensed physicians (medical or osteopathic doctors); (2) licensed or certified psychologists; (3) licensed optometrists; 4) licensed podiatrists; 5) qualified speech-language pathologists. 20 CFR 416.913 (2016). Thus, as of the date of the ALJ's decision, a nurse practitioner was not a "qualifying medical source" under the Social Security regulations. As of the date of the ALJ's decision, 20 CFR 416.913(e) provided: "(e) Completeness. The evidence in your case record, including the medical evidence from acceptable medical sources (containing the clinical and laboratory findings) and other medical sources not listed in paragraph (a) of this section, information you give us about your medical condition(s) and how it affects you, and other evidence from other sources, must be complete and detailed enough to allow us to make a determination or decision about whether you are disabled or blind." (*Id.*)

8

rejecting the opinion of the nurse practitioner.

Plaintiff argues that the Ninth Circuit has held that opinions less determinative than that of the nurse practitioner are probative, citing two opinions discussing the findings of an examining psychologist and a treating physician. *See Hill v. Astrue*, 698 F.3d 1153 (9th Cir. 2011); *Marsh v. Colvin*, 792 F.3d 1170, 1171 (9th Cir. 2015). The court declines to assess how "determinative" each of these two opinions are as compared with the ALJ's decision here, because Plaintiff does not address the issue of whether a psychologist or a physician were acceptable medical sources at the time those opinions were written. Further, Plaintiff's argument that rejection of NP Mallory's assessment on the sole ground that she was a nurse practitioner would be improper is unavailing because the ALJ did not reject NP Mallory's assessment on that ground. Rather, as set forth above, he gave little weight to NP Mallory's opinion because it was "brief, conclusory, and inadequately supported by clinical findings." (AR 34.)

The court has reviewed all of the parties' arguments and finds no error.

Mental Health Impairments

Plaintiff contends that the ALJ committed harmful legal error in Step Two of the sequential evaluation process by finding that her mental health impairments were non-severe. Plaintiff argues that the record as a whole demonstrates "consistent symptomology and limitations secondary to mental impairments that would cause more than a minimal effect on Price's ability to work." (Doc. 33, 12:21-23.) *See* 20 C.F.R. Section 404.1522 (a claimant's impairments are "not severe" if they do not "significantly limit" the "mental ability to do basic work activities). Plaintiff notes that she reported increased crying, citing AR 436, (Exhibit 5F); break-through anxiety which caused her psychiatric medications to be increased, citing AR 439 (Exhibit 5F); depression and fatigue, citing AR 440 (Exhibit 5F); fatigue, mood swings, and anxiety, citing AR 597 (Exhibit 8F). Plaintiff further notes that in April 2015, her counselor Heather Parenti reported that Plaintiff "appears sad and tearful" and she "lacks insight and depersonalization," citing AR 678, 680, (Exhibit 13F.) Plaintiff argues that the ALJ may not rely on evidence that supports a

9

particular conclusion, while ignoring other pertinent evidence. *See Attmore v. Colvin*, 827 F.3d 872 (9th Cir. 2016) (finding that the ALJ was required to examine the evidence under the "broader context" of the claimant's impairments, and may not "cherry-pick" among findings in the record to support a conclusion).

At Step Two, the ALJ found that Plaintiff's "medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." (AR 27.) In reaching this conclusion, the ALJ considered the four broad functional areas known as the "paragraph B" criteria: 1) activities of daily living; 2) social functioning; 3) concentration, persistence or pace; and 4) episodes of decompensation. (AR 28.) In the first three areas, the ALJ found that Plaintiff has mild limitations. *Id*. As to the fourth area, the ALJ found that Plaintiff has experienced no episodes of decompensation which have been of extended duration. *Id*.

Rather than ignoring evidence contrary to his conclusion, as Plaintiff claims, in his decision the ALJ cited both positive and negative evidence, including some of the same evidence on which Plaintiff now relies. In his Step Two analysis the ALJ found in part:

> On February 18, 2015, the claimant requested a service dog due to anxiety. (Ex. 14F, p. 13.) The claimant presented with an appropriate mood and affect and normal judgment (Ex. 14F, p. 14.). On March 20, 2015, a mental status examination revealed appropriate behavior, sadness, tearfulness, fluent speech, decreased insight and no difficulty understanding concrete instructions (Ex. 13F, p.4.). On April 20, 2015, the claimant alleged feelings of worthlessness (Ex. 13F, p. 2.) A mental status examination revealed appropriate behavior, sadness, tearfulness, fluent speech, decreased insight and no difficulty understanding concrete instructions. The claimant was diagnosed with mild major depressive disorder.

(AR 28.) Thus, the ALJ did not only cite evidence which supported his conclusion, but also discussed the evidence which tended to detract from it. The ALJ gave a balanced summary of the April 2015 medical report cited by Plaintiff, noting both the positive and the negative findings. He gave a similarly balanced summary of the February and March 2015 medical reports.

Plaintiff stresses that the agency's consultants opined on January 22, 2014 and April 22, 2014, that she would have moderate limitation in the ability to understand, remember and carry

10

out detailed instructions, citing AR 82 and AR 95. (Exhibits 1A and 3A.) The ALJ addressed those findings as follows:

> The undersigned has given little weight to the opinion of the State agency medical consultants. On initial review and on reconsideration, they opined the claimant had moderate limitation with regarding to understanding, remembering and carrying out detailed instructions. (Exs. 1A, 3A). Their opinion is inconsistent with the claimant's record as a whole, which reveals minimal mental health treatment and grossly normal mental status examination results, including appropriate behavior, fluent speech, nor difficulty understanding concrete instructions. (Ex. 13F).

(AR 28.) The court finds the ALJ properly set forth a thorough summary of the facts and the conflicting evidence on which he based his decision to give little weight to the opinion of the State agency medical consultants on this issue. *See Magallanes v. Bowen,* 881 F.2d at 751.

After considering all of the parties' arguments in regard to the ALJ's findings on Plaintiff's mental health impairments, the court finds no error. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted) (where the evidence is susceptible to more than one rational explanation, one of which supports the ALJ's decision, the court must uphold the ALJ's conclusion).

## CONCLUSION

Based on the foregoing, the court finds that the ALJ's decision is supported by substantial evidence and that the Plaintiff has failed to demonstrate legal error. Accordingly, Plaintiff's motion for summary judgment is hereby DENIED and Defendant's motion for summary judgment is hereby GRANTED.

A separate judgment will issue.

**IT IS SO ORDERED.**

Dated: September 18, 2018

ROBERT M. ILLMAN
United States Magistrate Judge

11